

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

June 5, 2017

<u>VIA ECF</u>
The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   Case Numbers 2:17-cv-02365-BMC, 1:17-cv-02368-BMC, 1:17-cv-02363-BMC, 1:17-cv-03283-BMC, and 1:17-cv-03285-BMC

Dear Judge Cogan:

Defendants respectfully ask the Court to reconsider the Multi District Litigation[1] ("MDL") court's summary judgment rulings on three critical issues of law where Second Circuit precedent requires a different result. These rulings concern: (i) Plaintiffs' lack of standing and antitrust injury to pursue federal antitrust claims as indirect purchasers of the allegedly price-fixed cathode ray tubes ("CRTs") incorporated into finished TVs and computer monitors, rather than as direct purchasers of the CRT components themselves; (ii) Plaintiffs' inability to invoke the "ownership-or-control" exception to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), with respect to purchases from non-defendant entities that lack a functional economic unity with any Defendant or co-conspirator; and (iii) application of the Foreign Trade Antitrust Improvements Act ("FTAIA"), 15 U.S.C. § 6a, which limits the extraterritorial reach of the U.S. antitrust laws with respect to the overseas CRT sales that are an inextricable part of Plaintiffs' claims here. Pursuant to the Court's May 22, 2017 Minute Entry and Order, Defendants submit this letter enclosing the relevant briefing and opinions of the Northern District of California.[2]

This Court has discretion under Federal Rule 54(b) to reconsider the MDL court's summary judgment rulings in these remanded matters, just as this Court can reconsider its own interlocutory orders at any time prior to final judgment. Fed. R. Civ. P. 54(b). Rule 54(b) grants this Court the authority to reconsider summary judgment rulings due to an intervening change in law,[3] to correct clear errors of law,[4]

---

[1] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-05944 (MDL No. 1917) (N.D. Cal. 2007). All ECF citations herein are to the MDL docket unless otherwise noted.

[2] For the Court's convenience, Defendants have also enclosed a flash drive containing electronic copies, including all supporting declarations and exhibits.

[3] *See Wannall v. Honeywell Int'l, Inc.*, 292 F.R.D. 26, 32 (D.D.C. 2013) (remand court overturning MDL court's denial of summary judgment because a state court decision issued after the MDL ruling constituted a "controlling or significant change in the law" that supported granting summary judgment); *see also Cty. of Suffolk v. First Am. Real Estate Sols.*, 261 F.3d 179, 185-87 (2d Cir. 2001) (affirming trial court's dismissal upon reconsideration where an intervening change of controlling law "might reasonably [have been] expected to alter the conclusion reached by the court").

[4] *See Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999) (finding that "to correct an error of law . . . is an obviously valid reason" for reconsidering an earlier decision); *see also In re MTBE Prod. Liab. Litig.*, No. 1:00-1898MDL1358(SAS), 2007 WL 2979642, at *1 (S.D.N.Y. Oct. 10, 2007) (granting reconsideration where "court overlooked [ ] matters . . . that might reasonably be expected to alter the conclusion reached").



June 5, 2017
Page 2

or to prevent "manifest injustice."[5]

Remand courts have exercised this authority to reconsider—and reverse—summary judgment rulings of MDL courts in circumstances analogous to those before this Court where it would be wasteful and inefficient to permit a trial to go forward on issues which the governing circuit court would then have to reverse. A prime example referred to at the recent status conference is the *Motorola* case that was consolidated as part of the *In re LCD-TFT (Flat Panel) Antitrust Litigation* MDL in the Northern District of California. *Motorola Mobility, Inc. v. AU Optronics Corp.*, No. 09 C 6610, 2014 WL 258154 (N.D. Ill. Jan. 23, 2014), *aff'd* 775 F.3d 816 (7th Cir. 2015). After remand to the Northern District of Illinois, defendants moved for reconsideration of the MDL court's denial of summary judgment on FTAIA issues. The *Motorola* court held that, whether evaluated under ordinary motion for reconsideration standards or under the law-of-the-case doctrine, post-remand reconsideration is appropriate whenever there is a clear error of law. *Id.* at *4-5. The remand court granted defendants' motion for reconsideration and granted summary judgment against most of Motorola's claims, finding there had been a clear error of law in the MDL court's application of the FTAIA. *Id.* at *9. The Seventh Circuit affirmed. 775 F.3d at 824.

Similarly, the Fifth Circuit has held that reconsideration on remand is appropriate because "a successor judge has the same discretion to reconsider an order as would the first judge," especially to "correct serious errors." *See, e.g.*, *In re Ford Motor Co.*, 591 F.3d 406, 411, 415 (5th Cir. 2009) (applying law-of-the-case doctrine). In *Ford*, the Fifth Circuit found both the out-of-circuit MDL court's decision and the remand trial court's decision not to reconsider it so "clearly erroneous" as to warrant mandamus, because the trial court ***ignored that controlling Fifth Circuit precedent required a different result on remand***. *Id.* at 415; *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance . . . .").

Reconsideration is also appropriate under Local Civil Rule 6.3. In this district, "[i]t is [] generally accepted that a judge can reconsider a decision rendered by another judge in the same case." *Guthermuth Invs., Inc. v. Coolbrands Smoothies Franchise, LLC*, No. 07-CV-1105 (ENV) (RER), 2007 WL 2128835, at *2 (E.D.N.Y. Jul. 25, 2007). Further, "because the denial of a motion for a summary judgment is an interlocutory order, the trial court is free to reconsider and reverse such a decision for any reason it deems sufficient."[6] *Vornado Realty Tr. v. Marubeni Sustainable Energy, Inc.*, 987 F. Supp. 2d 267, 276 (E.D.N.Y. 2013) (citations omitted).

---

[5] *See In re Ford Motor Co.*, 591 F.3d 406, 412 (5th Cir. 2009) (granting reconsideration upon finding transferee court's *forum non conveniens* dismissal was "so clearly erroneous that it would work manifest injustice"); *Henderson v. Metro. Bank & Trust Co.*, 502 F. Supp. 2d 372, 379 (S.D.N.Y. 2007) (granting reconsideration to correct potentially "manifest injustice" caused by misapplication of law).

[6] Although E.D.N.Y. Local Civil Rule 6.3 specifies that a motion to reconsider should ordinarily be filed within 14 days after the original determination, the Court can reconsider an interlocutory order at any time and it would be unjust in this procedural posture to strictly apply that deadline where a case has been remanded from another circuit. *See, e.g.*, *Roistacher v. Bondi*, 624 F. App'x 20, 22 (2d Cir. 2015) (district court may grant an extension of time to file a motion for reconsideration under Local Rule 6.3); *Church of Scientology Int'l v. Time Warner, Inc.*, No. 92 Civ. 3024 (PKL), 1997 WL 538912, at *4 (S.D.N.Y. Aug. 27, 1997) (applying same rule as in E.D.N.Y. and ruling court may exercise discretion to grant a motion for reconsideration, despite the failure to comply with this rule, "when justice so requires"), *aff'd sub nom. Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001).



The orders in question each raise fundamental legal issues that would be decided differently under Second Circuit authority. If left uncorrected, the decisions could result in an unjust jury verdict that would then likely be overturned on appeal.[7] Given the importance of these dispositive motions, and the potential waste and unfairness that would result from not reconsidering them now, the Court should exercise its discretion under Rule 54(b) to reconsider the rulings on these three critical issues of law.

**I. Plaintiffs Cannot Establish Antitrust Standing and Antitrust Injury Under Second Circuit Law**

*a. Illinois Brick's Direct-Purchaser Rule Precludes Plaintiffs' Claims*

Plaintiffs assert purported direct purchaser claims under Section 1 of the Sherman Act for an alleged CRT price-fixing conspiracy. But Plaintiffs do not claim to have purchased CRTs directly from Defendants or co-conspirators. Instead, Plaintiffs' "direct" purchaser claims are based solely on purchases of TVs or computer monitors containing CRTs. Because Plaintiffs did not purchase the allegedly price-fixed product (a standalone CRT, as opposed to a finished product containing the CRT) from anyone, they are *in*direct purchasers whose damages claims are barred under *Illinois Brick*, as strictly applied by the Second Circuit.

The Supreme Court has recognized only two limited exceptions where indirect purchasers may assert damages claims under the federal antitrust laws: (i) the existence of a "cost-plus" contract, where the customer is locked-in to buying a fixed quantity of goods in advance regardless of price or (ii) when the "direct purchaser is owned or controlled by its customer." *Illinois Brick*, 431 U.S. at 736 & n.16. These exceptions were premised on the idea that indirect purchasers should be allowed to sue *only* where market forces have been superseded such that the *entire* overcharge is passed on to the indirect purchaser as to require no complex pass-on determination. *See id*. But that situation does not arise where, as here, an indirect purchaser buys a finished product containing a price-fixed component, as there clearly would be complex factual issues as to whether the alleged price increase in a CRT could be passed on, and to what extent, in the very different markets for selling TVs or computer monitors.

Moreover, the Supreme Court has specifically cautioned against the creation of new or expanded exceptions to the *Illinois Brick* direct purchaser rule. *See Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 216-18 (1990). The Second Circuit—in contrast to the Ninth Circuit—has strictly followed *Illinois Brick* and *UtiliCorp* in not expanding upon the very narrow *Illinois Brick* exceptions, continuing to recognize only the two exceptions expressly created by the Supreme Court. *See Simon v. KeySpan Corp.*, 694 F.3d 196, 202-03 (2d Cir. 2012) (cost-plus exception); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 101 (E.D.N.Y. 2012) (Cogan, J.) (ownership-or-control exception). Indeed, this Court itself has recognized that the "existing exceptions"—as articulated in *Illinois Brick*—must be "narrowly construed to apply only to those situations in which the court is sure that a calculation of damages would not require consideration of complex market interactions." *Vitamin C*, 279 F.R.D. at 101.

By contrast, the district court in the MDL, following its view of Ninth Circuit precedent, took a much more expansive and contradictory view of the *Illinois Brick* exceptions. Judge Conti denied

---

[7] *See* 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478.1 (2d ed. 1987) ("Self-correction is manifestly important if the alternative is the greater delay and expense that would result from persisting in the error and eventual appellate reversal. Even if reversal is not likely, the trial court will prefer to reach a just result."); *see also Loumar, Inc. v. Smith*, 698 F.2d 759, 763 (5th Cir. 1983) ("[I]t would have been sheer waste . . . to permit a trial . . . and await reversal by this court.").



June 5, 2017
Page 4

Defendants' motion for summary judgment based on Plaintiffs' lack of antitrust standing to pursue damages claims as indirect purchasers of CRTs under *Illinois Brick*, finding that **the Ninth Circuit's decision in *Royal Printing***[8] permitted Plaintiffs to pursue federal antitrust claims "for alleged overcharges passed on to them when they purchased [a finished product] containing an allegedly price-fixed CRT."[9] Judge Tigar, who succeeded Judge Conti as presiding judge in the MDL, subsequently reached the same conclusion, essentially holding that *Royal Printing* created an entirely new exception to *Illinois Brick*—different from that recognized in footnote 16 of the Supreme Court's decision—that permitted purchasers of finished products containing an allegedly price-fixed component to assert indirect purchaser claims.

Significantly, the Ninth Circuit's *Royal Printing* exception, as applied by Judges Conti and Tigar, permits courts to simply *assume* that 100% of the overcharge was passed on to indirect purchasers of price-fixed components in order to avoid *Illinois Brick*'s express prohibition against the offensive use of pass on:

> Under the *Illinois Brick* exception, an indirect purchaser is permitted to sue for the entire overcharge because the entire overcharge was passed on to it as a result of market forces being superseded. Under the *Royal Printing* exception, however, an indirect purchaser is permitted to sue for the entire overcharge, even though the indirect purchaser only paid a portion, in order to avoid the risk of evidentiary complexities and duplicative recoveries.

Order at 14 (ECF No. 4742). This Ninth Circuit doctrine is directly contrary to Second Circuit authority, which requires that the *Illinois Brick* exceptions be narrowly construed. It is thus not surprising that even Judge Tigar indicated that he "recognizes that *Royal Printing* may be in tension with cases that limit the exceptions to the direct purchaser rule to those set out in *Illinois Brick*." *Id.* at 13 n.6. The Second Circuit limits the *Illinois Brick* exceptions in this very manner, rendering the MDL rulings applying the unique *Royal Printing* exception clear and manifest legal error in this Court.[10]

Indeed, district courts in the Second Circuit have expressly rejected "pass on" theories in analogous cases where the plaintiff did not directly purchase the price-fixed product. In *In re Public Offering Antitrust Litigation*, the Southern District of New York dismissed federal antitrust claims brought by purchasers of IPO securities, where the alleged price-fixed product was not the IPO securities themselves, but the underwriting services provided by defendants and purchased by the issuers in conjunction with the issuance of the IPO securities. No. 98 Civ. 7890(LMM), 2004 WL 350696, at *6 (S.D.N.Y. Feb. 25, 2004). As the

---

[8] *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980).

[9] Defendants seek reconsideration of the following orders with respect to *Illinois Brick*: Order Granting in Part and Denying in Part Defs.' Joint Mot. for Summ. J., Nov. 29, 2012 (ECF No. 1470) (addressing Defs.' Joint Mot. for Summ. J., Dec. 12, 2011 (ECF No.1013)); Order on Defs.' Mots. for Summ. J. Relating to Standing and the Direct Purchaser Rule, Aug. 4, 2016 (ECF No. 4742) (addressing Defs.' Mot. for Partial Summ. J. for Lack of Antitrust Injury and Antitrust Standing Under Federal and Certain State Laws, Nov. 7, 2014 (ECF 3050)).

[10] Moreover, simply "assuming" pass on of the entire alleged overcharge to indirect purchasers is not only impermissible under the Second Circuit's interpretation of *Illinois Brick*, it violates recent Supreme Court authority interpreting the injury in fact requirement of Article III. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (explaining that a plaintiff invoking federal jurisdiction bears the burden of establishing injury in fact that is both "concrete and particularized"). As interpreted and applied by the MDL judges, the *Royal Printing* exception to *Illinois Brick* would evade this Article III fact of injury requirement entirely by simply assuming injury to the Plaintiffs even if no portion of the alleged CRT overcharge was passed on.



June 5, 2017
Page 5

court reasoned, "the price of such services, like the concrete blocks in *Illinois Brick*, were simply incorporated into the price of the products (IPO securities) Plaintiffs ultimately purchased. Accordingly, Plaintiffs are indirect purchasers of Defendants' underwriting services as defined in *Illinois Brick* and are barred from bringing suit for Sherman Act violations under Section 4 of the Clayton Act." *Id.*; *see also In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 412 (S.D.N.Y. 2011) (dismissing Sherman Act claims brought by purchasers of CDs alleging a price fixing conspiracy as to online music); *Paycom Billing Servs. v. MasterCard Int'l, Inc.*, 467 F.3d 283, 291-92 (2d Cir. 2006) (affirming the lower court's holding that internet merchant lacked standing to bring an action under the Sherman Act where the allegedly price-fixed fees were levied against the bank above the merchant in the chain of commerce, putting the merchant "in a position analogous to the indirect purchasers in *Illinois Brick*"); *Salveson v. JP Morgan Chase & Co.*, ECF No. 83, Case No. 1:14-cv-03529-MKB-JO (E.D.N.Y. Nov. 26, 2014), *aff'd* 663 F. App'x 71 (2d Cir. 2016) (Cogan, J., sitting on panel by designation) (affirming district court's dismissal of allegations on behalf of cardholders that issuing banks and their affiliates participated in an antitrust conspiracy to fix interchange fees in violation of the Sherman Act). The same reasoning, applying Second Circuit authority, requires reconsideration of the MDL rulings and a rejection of Plaintiffs' indirect purchaser claims here under *Illinois Brick*. *See Vitamin C*, 279 F.R.D. at 101.

    b. *Plaintiffs Also Lack Antitrust Standing Under AGC*

In addition to requiring dismissal under *Illinois Brick*, the fact that Plaintiffs only purchased finished products containing CRTs, rather than CRTs themselves, also means that they lack antitrust standing to pursue any of their claims under *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*").[11] Judge Tigar rejected Defendants' *AGC* summary judgment motion in the same ruling that adopted Judge Conti's application of the *Royal Printing* exception. But he did so without considering controlling Second Circuit authority to the contrary, including its decision in *In re Aluminum Warehousing Antitrust Litigation*, which was issued five days after Judge Tigar's *AGC* decision. *See* 833 F.3d 151 (2d Cir. 2016).

In *AGC*, the Supreme Court limited recovery to antitrust plaintiffs who could establish "antitrust standing," separate and apart from Article III standing. The first and most important criterion in this inquiry is "whether the nature of the plaintiff's alleged injury is of the type the antitrust laws were intended to rectify"—*i.e.*, "antitrust injury." *See AGC*, 549 U.S. at 538; *see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). As a general rule, "only those that are participants in the defendants' market can be said to have suffered antitrust injury." *See Aluminum*, 833 F.3d at 158 (collecting cases); *id.* at 161 ("The upshot is that to suffer antitrust injury, the putative plaintiff must be a participant in the very market that is directly restrained.").

Before the MDL court, Defendants argued that because Plaintiffs bought only finished TVs and computer monitors and did not participate in the market for CRTs, they could not demonstrate antitrust injury. *See generally* ECF No. 3050. In opposing the motion, Plaintiffs relied on what they argued was an exception to the market participation requirement, because, according to Plaintiffs, the markets for stand-alone CRTs and the markets for finished products containing CRTs as components are purportedly

---

[11] *See* Order on Defs.' Mots. for Summ. J. Relating to Standing and the Direct Purchaser Rule, Aug. 4, 2016 (ECF No. 4742).



"inextricably intertwined." *See* ECF No. 3245 at 11-12 (citing *Blue Shield v. McCready*, 457 U.S. 465, 479, 484 (1982)). Judge Tigar agreed, relying solely on district court decisions from the Northern District of California and two decisions from the Third Circuit. *See* Order at 32-33 (ECF No. 4742). But Second Circuit authority, which was not considered by Judge Tigar, is to the contrary.

Less than a week after the MDL court's denial of summary judgment on *AGC* grounds, the Second Circuit issued an antitrust standing decision that cannot be reconciled with the MDL court's decision. Specifically, the Second Circuit applied *AGC* and affirmed the dismissal, without leave to amend, of antitrust claims by "end user" purchasers of processed aluminum and aluminum products brought against defendants who had allegedly inflated the price of raw aluminum, which was then incorporated into processed aluminum bought by the downstream plaintiffs. *See Aluminum*, 833 F.3d at 162. In reaching this conclusion, the Second Circuit considered and rejected the very same arguments Plaintiffs made to Judge Tigar.

Like Plaintiffs here, the *Aluminum* plaintiffs did not participate in the market for the allegedly price-fixed product; rather, they were (i) end-user commercial purchasers (the "Commercials," who bought fabricated aluminum from first-level purchasers to make finished products); and (ii) end-user consumers of those finished aluminum products (the "Consumers"). Notwithstanding their lack of market participation, plaintiffs alleged that they had antitrust standing because "their role in creating demand" for the allegedly price-fixed product (*i.e.*, raw aluminum) was "inextricably intertwined" with the injury that defendants sought to inflict. *Id*. at 162. Further, the *Aluminum* plaintiffs argued that "if Commercials and Consumers did not exist, there would be no real world purchasers of aluminum, and without users of physical aluminum, there would be no market for aluminum futures or aluminum warehousing." *Id*. at 162. The Second Circuit soundly rejected these arguments, holding that under *AGC*, "Consumers and Commercials lack antitrust standing on the ground that they did not (and could not) suffer antitrust injury," which is a "deficiency that is fatal." *Id*. at 154, 163.

The Second Circuit considered the "inextricably intertwined" exception at length, finding it to be exceedingly narrow and focused on an inextricable linking of a plaintiff's injury with the anticompetitive conduct in question. *Id*. at 163 (noting that "not every collusive scheme will yield plaintiffs that can claim injury under *McCready*"). That narrow exception has no application here, where none of the Plaintiffs claims to be the "immediate target of the alleged scheme," or someone used as a pawn by a conspirator as the "very means" to carry out its conspiracy. *Id*. at 160, 162-63. As the Second Circuit found, any broader application of the "inextricably linked" exception "would limitlessly increase the universe of potential plaintiffs, and cannot be squared with *McCready* itself, which held that courts must apply a 'proximate cause' test to alleged antitrust injury" that "requires that the anticompetitive conduct proximately cause the antitrust injury." *Id*. at 162 (quoting *McCready*, 457 U.S. at 477-78). Based on this authority, the MDL order denying Defendants' summary judgment motion on *AGC* grounds, which would dispose of all of Plaintiffs' damages claims, should be reconsidered as clear legal error under Second Circuit law.

### II. *Illinois Brick's* Ownership-or-Control Exception Does Not Apply to Purchases from Non-Defendant Entities Lacking a Functional Economic Unity With Defendants or Co-Conspirators

This Court should also reconsider the MDL court's application of *Royal Printing*, which it relied



June 5, 2017
Page 7

on in permitting Plaintiffs to assert claims based on the purchase of TVs or monitors from non-defendant entities without any evidence or finding of functional economic unity.[12] The MDL court's application of *Royal Printing*'s expansive version of the "ownership-or-control" exception to these non-Defendant entities is contrary to Second Circuit precedent strictly applying the two exceptions to *Illinois Brick*. Indeed, the only ownership-or-control exception recognized by the Second Circuit is the one set forth in footnote 16 of *Illinois Brick* and that narrow exception, which this Court properly applied in *Vitamin C*, requires a different result with respect to the non-Defendant sales that were the subject of the MDL court's summary judgment rulings because there was no finding of a "functional economic or other unity" with any of the Defendants or their alleged co-conspirators.

As discussed in Point I above, district courts in the Second Circuit have consistently construed the "ownership-or-control" exception set forth in *Illinois Brick* narrowly and have not recognized the Ninth Circuit's reasoning in *Royal Printing*. These courts have held that the "ownership-or-control" exception should only apply where the "relationships involve such ***functional economic or other unity*** that there effectively has been only one sale." *Leider v. Ralfe*, No. 01 Civ. 3137 (HB), 2003 WL 22339305, at *4 (S.D.N.Y. Oct. 10, 2003) (emphasis added) ("functional economic unity" test); *see also Vitamin C*, 279 F.R.D. at 101. A plaintiff "must therefore present facts demonstrating that such unity exists." *Id.* at 101. This Court has held that the exception only applies if plaintiffs establish that: (1) "the defendant owns or controls the intermediary that sold the goods to the indirect-purchaser plaintiff;" (2) the relationship between the defendant and intermediary "involve[s] such functional economic or other unity that there effectively has been only one sale between the defendant and the indirect purchaser;" and (3) the defendant "can be said to have set prices along the chain of distribution."[13] *Id.* at 101 (internal quotations omitted).

In *Royal Printing*, the Ninth Circuit added a new exception, in addition to the "functional economic unity" test, creating a test that subjectively analyzes the likelihood that the direct purchaser will sue the defendant manufacturer of the alleged price-fixed product. 621 F.2d at 326. Specifically, the *Royal Printing* "ownership-or-control" exception is based on the rationale, not supported by *Illinois Brick* or recognized in the Second Circuit, that the indirect purchasers should have standing to sue when "the control relationship between the price fixer and direct purchaser foreclose[s] a realistic possibility of suit by the direct purchaser." Order at 14 (ECF No. 4742) (citing *Royal Printing*, 621 F.2d at 325). The MDL court explicitly recognized *Royal Printing*'s divergence from Supreme Court precedent in discussing how the "control exception" in *Royal Printing* is distinct from the "so-called control exception alluded to in footnote

---

[12] Defendants seek reconsideration of the following orders with respect to the application of the ownership-or-control exception: Order on Defs.' Mots. for Summ. J. Relating to Standing and the Direct Purchaser Rule, Aug. 4, 2017 (ECF No. 4742) (addressing LGE Defs.' Mot. for Partial Summ. J. on Standing Grounds, Nov. 7, 2014 (ECF No. 3053); SDI Defs.' Mot. for Partial Summ. J. for Lack of Standing as to DAPs' Sherman Act Damage Claims Based on CRT Product Purchases From Samsung Electronics, Nov. 7, 2014 (ECF No. 2983); Mitsubishi Electric Defs.' Mot. for Partial Summ. J. as to DAPs' Sherman Act Damages Claims Based on CRT Product Purchases From NEC Corporation and NEC-Mitsubishi Electric Visual Systems Corporation, Nov. 7, 2014 (ECF No. 3026); and Certain Defs.' Mot. For Partial Summ. J. With Respect to DAPs' Alleged Direct Damage Claims Based on Purchases From Sanyo, Nov. 7, 2014 (ECF No. 3014)).

[13] A plaintiff "may not rely simply on the existence of a parent-subsidiary relationship" to establish unity. "[T]his evidentiary showing is singularly insufficient" to establish ownership-or-control, especially because the defendant "did not exercise control over the prices that [the direct purchaser] charged [its] customers" and "pricing determinations were influenced by market factors." *Vitamin C*, 279 F.R.D. at 101-02.



16 of *Illinois Brick*." Order at 9 n.3, 13 (ECF No. 4742). But such a "new" *Illinois Brick* exception cannot be applied under Second Circuit law.

Indeed, a number of courts outside of the Ninth Circuit have specifically rejected the idea that the subjective possibility of suit is a proper basis to apply the limited ownership-or-control exception to *Illinois Brick*. *See, e.g.*, *Dickson v. Microsoft Corp.*, 309 F.3d 193, 215 (4th Cir. 2002) (stating that direct purchasers' election "not to sue" the defendant did not create an exception to the *Illinois Brick* rule); *Collins v. Int'l Dairy Queen*, 59 F. Supp. 2d 1305, 1310 (M.D. Ga. 1999) (rejecting plaintiffs' reliance on the intermediaries' "presumed reluctance to sue [the defendants]" to qualify for the control exception) (citing *Illinois Brick*, 431 U.S. at 746). This Court should rule similarly under Second Circuit law.

If this Court reconsiders the MDL court's ownership-or-control orders, it will see that Plaintiffs cannot satisfy the functional economic unity test with respect to sales from the non-defendant entities that were the subject of Defendants' ownership-or-control summary judgment motions: LPD, NEC Corporation, NEC-Mitsubishi Electric Visual Systems Corporation, Sanyo North America Corporation, Sanyo Manufacturing Corporation, Sanyo Energy USA Corporation, and/or Sanyo Fisher (USA) Corporation, and Samsung Electronics Co., Ltd. None of the moving Defendants owned or controlled the third party entity that sold the finished products to the indirect purchaser Plaintiff.[14] Nor can Plaintiffs overcome the presumption of corporate separateness and establish that the relationship between the Defendant and the third party entity that sold the finished products to the Plaintiffs was one of functional economic or other unity, as this Court and other courts in the Second Circuit apply that test. Moreover, Defendants have shown in their moving papers that Plaintiffs are unable to establish that Defendants effectively set the prices along the chain of distribution for finished products sold by the non-defendant entities that are the subject of the ownership-or-control orders, warranting a finding that such purchases be excluded from Plaintiffs' damages claims.

### III. The FTAIA Bars The Portion of Plaintiffs' Claims Based on CRTs That Were Allegedly the Subject of Price Fixing in Foreign Commerce

Finally, Defendants respectfully ask the Court to reconsider the decision by the MDL court rejecting Defendants' motions for partial summary judgment under the FTAIA.[15] 15 U.S.C. § 6a. Under Second Circuit authority construing the FTAIA, summary judgment is warranted as to Plaintiffs' claims that are based on CRTs originally sold at allegedly price-fixed levels overseas.

Plaintiffs here are purchasers of TVs and computer monitors whose claims derive from purchases made by non-conspirators of allegedly price-fixed CRTs that preceded them in the chain of manufacturing

---

[14] The LGE Defendants' motion addressed a scenario where defendant LG Electronics, Inc. ("LGE") *purchased* CRTs from LG.Philips Displays ("LPD"), an entity it allegedly owned and controlled; however, there was still no economic unity between seller, LPD, and direct purchaser, LGE. *See* LGE Defs.' Mot. for Partial Summ. J. on Standing Grounds, Nov. 7, 2014 (ECF No. 3053).

[15] Defendants seek reconsideration of the following order addressing the FTAIA: Order on Mots. for Summ. J. Concerning the FTAIA, Sept. 30, 2016 (ECF No. 4910) (addressing LG and Mitsubishi Electric's Mot. for Partial Summ. J. on FTAIA Grounds, Nov. 7, 2014 (ECF No. 3032); Defs.' Mot. for Summary Judgment Based Upon Pls.' Failure to Distinguish Between Actionable and Non-Actionable Damages Under the FTAIA, Nov. 7, 2014 (ECF No. 3008)).



June 5, 2017
Page 9

and distribution. The FTAIA excludes a significant amount of these purchases—those where the alleged CRT sale occurred in foreign commerce overseas, and Plaintiffs' claim is based on an asserted "pass on" of the overcharge through various manufacturing and distribution channels to the finished products which Plaintiffs purchased in the United States. The MDL court applied Ninth Circuit authority to find that such sales are not excluded by the FTAIA, but two leading Second Circuit decisions on the FTAIA, *Kruman v. Christie's International PLC*, 284 F.3d 384 (2d Cir. 2002), and *Lotes Co., Ltd. v. Hon Hai Precision Industry Co., Ltd.*, 753 F.3d 395 (2d Cir. 2014), require a different result, warranting reconsideration by this Court.

    a. The FTAIA's Import Commerce Exclusion

In *Kruman*, 284 F.3d at 395, the Second Circuit instructed that under the import commerce exclusion, the "relevant inquiry is whether the conduct of the defendants—not the plaintiffs—involves import trade or commerce." Under *Kruman*'s application of the import commerce exclusion, the FTAIA bars claims that are based on the purchase of CRT finished products containing CRTs that were originally sold overseas. (Although *Kruman* was abrogated in part by the Supreme Court's decision in *Empagran*,[16] the import commerce language in *Kruman* was not impacted by that decision and continues to be followed by courts in this district.)

The conspiracy allegations here relate solely to the prices of CRTs, not the prices of the TVs or monitors that Plaintiffs purchased. Further, the vast majority of CRTs sold by Defendants pursuant to the alleged conspiracy involved CRTs sold to TV and computer monitor manufacturers in Asia, not to manufacturers located in the United States. Defendants' FTAIA motions in the MDL were directed at these foreign-sold CRTs that were allegedly price-fixed in Asia.

The MDL decision applying the import commerce exclusion wrongly held that the exclusion applied because Defendants (or their subsidiaries or affiliates) sold imported CRT finished products to Plaintiffs in the United States. *See* Order at 5 (ECF No. 4910). But finished products are not the allegedly price-fixed goods, and Defendants' supposed importation of non-price-fixed goods sold at market prices—the CRT finished products—cannot render the allegedly price-fixed CRTs first sold overseas subject to the import commerce exclusion, any more than the alleged price-fix on auction services in *Kruman* fell within the import commerce exclusion simply because the goods sold at auction were subsequently imported into the United States. *See* 284 F.3d at 395-96 ("While some of the goods purchased in those auctions may ultimately have been imported by individuals in the United States, the object of the conspiracy was the price that the defendants charged for their auction services, not any import market for those goods.").

It is clear legal error, under Second Circuit law, to hold, as the MDL court did, that the import commerce exclusion from the FTAIA applies to any item that is eventually "imported into the United States, even if that good was sold by another conspirator or imported by someone else." Order at 6 (ECF No. 4910); s*ee also In re MTBE Prod. Liab. Litig.*, 2007 WL 2979642, at *1 (identifying clear legal error where "court overlooked [ ] matters . . . that might reasonably be expected to alter the conclusion reached"). In this circuit, Defendants' conduct with respect to foreign-sold CRTs does not constitute import commerce. *See Precision Assocs. v. Panalpina World Transp., (Holding) Ltd.*, No. CV-08-42 (JG) (VVP),

---

[16] *F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004).



June 5, 2017
Page 10

2013 WL 6481195, at *25 (E.D.N.Y. Sept. 20, 2013) (ruling that purchase by U.S. entities of foreign-to-foreign freight forwarding services did not constitute import commerce).

    b. *The FTAIA's "Gives Rise To" Prong*

The MDL court's decision denying summary judgment under the FTAIA should also be reconsidered because of its erroneous application of the "gives rise to" requirement of the FTAIA. Under the Second Circuit's decision in *Lotes*, the "gives rise to" language in the FTAIA requires that a defendant's conduct have a direct domestic anticompetitive effect that gives rise to plaintiff's claim. *See Lotes*, 753 F.3d at 414. For this reason, the Second Circuit has expressly held that the FTAIA applies and bars claims when foreign harm allegedly suffered by a first purchaser subsequently results in domestic harm under a pass-on theory. *Id.* at 414 (noting that if foreign injury causes U.S. effects, the exception does not apply because "the direction of causation runs the wrong way"). The Seventh Circuit reached the same conclusion in *Motorola*, in which it held that the FTAIA barred Motorola from recovering for claims based on alleged price-fixing of LCD panels that were sold abroad, incorporated into mobile phones abroad, and then brought into the United States. 775 F.3d at 820-23. The MDL court declined to consider *Motorola* because it was not a Ninth Circuit decision. Nor did it consider the Second Circuit's holding in *Lotes*. For this reason, the ruling should be reconsidered by this Court and Second Circuit law should be applied to grant summary judgment in Defendants' favor on the overseas CRT sales at issue.

By not distinguishing between sales of CRTs in Asia and those in the United States, the MDL court did not properly apply the FTAIA and its failure to do so cannot be reconciled with controlling Second Circuit authority. Reconsideration of this FTAIA ruling is thus warranted.

    c. *A Jury Cannot Identify Plaintiffs' Damages For Domestic Purchases*

Finally, if reconsideration is permitted and summary judgment is granted on FTAIA grounds as to Plaintiffs' claims involving foreign-sold CRTs, then the entirety of their damages claims must be dismissed because, as presented by Plaintiffs, their damages study provides no way for a jury to identify and disaggregate foreign CRT purchases that are not actionable under the FTAIA from finished products purchased by Plaintiffs that contain CRTs manufactured or sold at allegedly priced fixed amounts in the United States.[17] By relying solely upon a dataset of aggregated, worldwide sales, Plaintiffs' damages model runs afoul of the Supreme Court's decision in *Comcast Corp. v. Behrend*, which expressly held that antitrust experts cannot rely on damages models that include both actionable and non-actionable claims (in that case, under liability theories which plaintiffs had abandoned). 133 S. Ct. 1426, 1433 (2013) ("any model supporting a 'plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation'"). This summary judgment ruling is thus also warranted for reconsideration in light of the failure of the MDL court to properly apply the FTAIA in a manner consistent with the law and Second Circuit precedent.

---

[17] *See* Defs.' Joint Mot. for Summ. Based Upon Pls.' Failure to Distinguish Between Actionable and Non-Actionable Damages Under the FTAIA, Nov. 7, 2014 (ECF No. 3008).



Respectfully submitted,

        WINSTON & STRAWN LLP

        By: */s/ Jeffrey L. Kessler*
        Jeffrey L. Kessler
        Eva W. Cole
        Molly M. Donovan
        Jennifer M. Stewart
        200 Park Avenue
        New York, New York 10166
        Telephone: (212) 294-4698
        Facsimile: (212) 294-4700
        jkessler@winston.com
        ewcole@winston.com
        mmdonovan@winston.com
        jstewart@winston.com

        David L. Yohai
        David Yolkut
        **WEIL, GOTSHAL & MANGES LLP**
        767 Fifth Avenue
        New York, New York 10153-0119
        Telephone: (212) 310-8000
        Facsimile: (212) 310-8007
        david.yohai@weil.com
        david.yolkut@weil.com

        *Counsel for Defendants Panasonic Corporation and MT Picture Display, Co., Ltd*

cc: All Counsel (via ECF)